## WILLIAM LEAVENWORTH *against* BENJAMIN UPSON.

The sale and assignment of a promissory note, for the full value thereof, by one assignee to a subsequent one, does not, of itself, imply a warranty that the maker, having had notice of such sale and assignment, shall not take a discharge from the payee.

WRIT of error.

This was an action on the case. The declaration was as follows: "That on or about the 24th of *September*, 1803, the defendant executed and delivered to *Daniel Osborn*, of *Waterbury*, for value of him received, his the defendant's promissory note, dated at *Waterbury*, on the 24th of *September*, 1803, wherein and whereby the defendant promised to pay the said *Osborn* one hundred dollars in twelve months from the date of said note; which note hath been lost by time and accident, and cannot be produced by the plaintiff. And the plaintiff says, that on or about the 1st of *March*, 1804, the note then being wholly due from the defendant to said *Osborn*, said *Osborn* sold and assigned the same to the plaintiff, for the full value thereof; of which sale and assignment the defendant had notice, on or about said 1st of *March*, and while

said note remained wholly due. And the plaintiff further says, that said *Osborn*, at the time of said assignment, and at the time of said notice thereof to the defendant, was, and ever since hath been, and still is, an entire bankrupt, and wholly unable to pay one cent; and that the same hath, at all times since said assignment, been well known to the defendant. And the plaintiff further says, that on or about the 1st of *June*, 1804, he sold and assigned said note, for the value thereof, to *Stephen Twining*, who, on the 27th of said *June*, and while said note was wholly due from the defendant, gave notice to the defendant, that the same had been duly assigned to him, and had become his the said *Twining's* property. And the plaintiff further says, that on or about the 1st of *November*, 1804, the defendant wholly neglecting and refusing to pay said note, and the same remaining due from the defendant as aforesaid, said *Twining*, as he had right to do by virtue of said assignment, commenced a suit on said note, by writ returnable before the county court to be holden at *New-Haven*, within and for the county of *New-Haven*, on the fourth *Tuesday* of *November*, 1804; and the defendant, wickedly intending and contriving to injure and defraud the plaintiff, on or about the 6th of *December* last, and while said suit on said note was pending before said court, applied to said *Osborn*, and requested him said *Osborn* to give to him the defendant a discharge from said note, and also from the cost that had arisen on said suit. And said *Osborn*, fraudulently combining with the defendant to injure the plaintiff, did, at said *Waterbury*, on or about the 6th of *December*, 1804, and while said note remained wholly due from the defendant, execute and deliver to the defendant a written discharge of said note, and said costs; which discharge the defendant then and there fraudulently, and with the intent aforesaid, received of said *Osborn;* and afterwards, on or about the 8th of said *December*, appeared before said court holden on

June, 1809.

LEAVEN-
WORTH.
v.
UPSON.

the fourth *Tuesday* of said *November*, and contriving and intending as aforesaid, fraudulently pleaded said discharge in bar of said action on said note, in consequence whereof said court gave judgment in said action for the defendant against said *Osborn :* all which by the files and records of said court ready in court to be shown may appear. And the plaintiff says, that by reason of the said wrong doings of the defendant, said *Twining* failed of recovering the value of said note of the defendant, and lost the costs of said suit, and sustained great damage, amounting to 25 dollars. And the plaintiff says, that in consequence of his assignment of said note to said *Twining* he was liable to pay said *Twining* the amount of said note, which is 104 dollars, and said costs and damages. And the plaintiff says, that he has actually paid said *Twining* the amount of said note, costs and damages, amounting in the whole to 129 dollars; all which wrong doings of the defendant are to his damage the sum of 200 dollars."

To this declaration there was a general demurrer; and the superior court adjudged the same insufficient.

*Daggett*, for the defendant, vindicated the judgment on these grounds:

1. That *Twining* was the person injured, if any one, and not the plaintiff. The property was assigned to *Twining*. The plaintiff had no interest, equitable or legal. *Kirby*, 51. 2 *Swift's Syst.* 159, 160.

2. That no assignment is here alleged, in such a manner, that the court can protect the plaintiff, as it does not appear that the note was *delivered.* To this point *Newl. on Cont.* 380. and *Perkins* v. *Parker*, 1 *Mass. Rep.* 117. were cited.

3. That the plaintiff was not injured, because upon the declaration it does not appear, that he was at all liable over to *Twining*. It is said, indeed, that the note was *sold* and *assigned.* But *that* does not imply future

6

liability ; there might be a sale and assignment with an express exemption from liability. The words *sell* and *assign* import nothing more than that the seller is the owner of the property, and that he transfers his interest to the vendee. The allegation that the plaintiff paid the amount of the note, costs and damages, to *Twining*, does not help the matter. If he paid his money where he was not obliged to pay it, this gives no right to *Twining*, or to himself, which did not exist before.

*Twining*, contra.

It is not necessary that *Leavenworth* should have had an interest in the note at the time of the discharge in order to render the discharge a fraud upon him. It was in consequence of the discharge, that he was subjected to the payment of the note and costs to his endorsee. The contract between an endorsor and an endorsee includes these things: that the note is genuine ; that it contains nothing illegal, which shall vitiate it ; that it has not been discharged ; and that the maker will be able to pay it, and will pay it, upon the holder's using due diligence. In this case, there is no pretence that *Leavenworth* has failed for want of due diligence. The same contract is made by endorsement here, as where notes are negotiable ; nor will any fraud of the payee be tolerated here more than in *England* or in *New-York.* The payee, in *England*, after endorsement, cannot discharge. It would be idle, therefore, to make any contract that he should not. But here, where notes can be discharged by the payee, there is an implied contract between the endorsor and endorsee, that there shall be no discharge, which will frustrate the payment. It is as reasonable that by an endorsement, the endorsor should be considered as contracting that the payee should not discharge as that the maker should be responsible.

It is *equitable* that an endorsor receiving the full value

<div style="margin">

June, 1809.

LEAVEN-
WORTH
v.
UPSON.

</div>

June, 1809.     of a note, should be holden to answer for any failure of

LEAVEN-         a recovery, by the diligent endorsee; and it is reasona-
WORTH           ble to presume, that he contracts against all the risks he
v.
UPSON.          must be subjected to, if he continued to hold the note.

Now, the allegations, that the note was *sold and as-signed for the full value thereof*, are equivalent, as far as respects legal consequences, to a blank endorsement of the note. The *sale* of the note, and *the receipt of the value of it*, are all that is of the *essence* of the transaction. All the warranty in the case is an implication of law from the fact of selling for the value, and not the import of any terms used in the transaction. 2 *Swift's Syst.* 159. *Wheeler* v. *Wheeler, in superior court, January,* 1809. Endorsing is but a mode of assignment. What reason can be given, why one mode of assignment, the *substance* in both cases being the same, should be construed to imply a more or less extensive contract than the other? Why should a different import, or legal effect, be given to the same transaction, when proved by an endorsement on the note, by a separate writing, or by parol?

But it is objected, that the declaration states no delivery of the note to the plaintiff, or his endorsee. To this it may be answered, that delivery is not necessary to a transfer of interest in the note. The cases cited from *Newland,* and from *Massachusetts Reports,* both related to questions between the assignee and *creditors* of the assignor. Delivery is, in no case, necessary for any purpose, but to prove the sale *bonâ fide,* or to prevent the possession of the vendor from operating a fraud. But if a delivery in this case were necessary, the terms *sold* and *assigned* import one.

BY THE COURT. It appears from the declaration, that the plaintiff had assigned to *Stephen Twining* all his interest in the note; and that notice thereof had been given to the defendant previous to his receiving the discharge in question. And the plaintiff has not alle-

ged any facts, which render him liable to *Twining*. The defendant's receiving this discharge, therefore, might be a fraud on *Twining*, but was no injury to the plaintiff.

<div style="text-align:right">June, 1809.<br>LEAVEN-<br>WORTH<br>v.<br>UPSON.</div>

Judgment affirmed.